*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SHIMMONS/HARE, Minors.

FOR PUBLICATION
June 09, 2026
12:25 PM

No. 377819
Ogemaw Circuit Court
Family Division
LC No. 25-017998-NA

Before: CAMERON, P.J., and BOONSTRA and SWARTZLE, JJ.

BOONSTRA, J.

Respondent appeals by right the trial court's order removing her children, AS and EH, from her care, arguing that the trial court violated her procedural due-process rights because she received insufficient notice of the hearing and because the trial court did not follow the procedural requirements to remove the children from her care. We vacate the order and remand for further proceedings consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Respondent had a history of investigations by Children's Protective Services (CPS) because of concerns regarding domestic violence and substance use. The CPS investigator assigned to respondent's case described these investigations as "unsuccessful . . . despite extensive efforts made by the department to service the family and rectify the child safety concerns." For example, in 2022, CPS began an investigation after respondent tested positive for cannabinoids and amphetamines when she gave birth to EH[1] and EH exhibited signs of withdrawal. Throughout the investigation, respondent failed to follow through with the offered services, refused drug screens, and did not cooperate with CPS during its home visits. In 2024, CPS received another request for investigation of alleged substance use and domestic violence between respondent and

---

[1] EH's legal father was named as a respondent but is not a party to this appeal. EH's biological father was not named as a respondent.

her boyfriend. Respondent also had three previous convictions for possession of controlled substances.

In April 2025, CPS received a complaint alleging that EH's eight-year-old sister, AS, did not feel safe at home because respondent and her boyfriend frequently had physical fights with each other, the home had no running water, and both respondent and her boyfriend were addicted to drugs. A CPS investigator interviewed AS, who reported that the home had no working utilities and that when respondent and her boyfriend argued, she would take EH to the backyard, where they would hide under a tarp or in a refrigerator. Respondent refused drug screens and did not allow a home visit until June 2025. Later that month, respondent was arrested and charged with two counts of delivering or manufacturing a controlled substance.

In July 2025, the Department of Health and Human Services (DHHS) filed a petition requesting that the trial court exercise jurisdiction over the children under MCL 712A.2(b)(1) and (2). The initial petition did not request that the children be removed from respondent's care.

The trial court held a preliminary hearing on August 6, 2025. Respondent appeared for the hearing and confirmed that she had received a copy of the petition and understood its contents. The DHHS confirmed that it was not requesting the children's removal. The trial court confirmed respondent's address, then it adjourned the preliminary hearing until August 27, 2025 so that respondent could obtain a court-appointed attorney. The next day, an attorney was appointed for respondent and the trial court issued a notice of hearing for the scheduled preliminary hearing on August 27. That hearing was later adjourned to September 29, 2025.

But on August 29, 2025, CPS received another complaint, alleging that respondent had "hit [her boyfriend] repeatedly in the face, head, and upper torso while he was holding [EH] in his arms." EH was unharmed, and AS was not involved but had witnessed the altercation. Law enforcement officials informed CPS that they had responded to a report of domestic violence at respondent's home, but respondent had "fled the scene prior to their arrival." They anticipated that a warrant would be authorized for respondent's arrest.

On September 5, 2025, the DHHS filed an amended petition requesting an order removing the children from respondent's care, including new allegations regarding the August 29, 2025 incident, and emphasizing that law enforcement had visited the home 37 times "for welfare checks or to respond to domestics." Later that same day, the trial court held what it characterized as an emergency removal hearing. Respondent was not present and substitute counsel appeared on her behalf. The substitute counsel confirmed that he had received a copy of the amended petition, but he stated that he did not know where respondent was and had not heard from her. The CPS investigator stated, "I e-mailed [respondent] a copy of the petition, and—and I texted her and let her know that we had court today, and I also messaged her and let her know that I can send her a Zoom link. She has not responded." The last time that the investigator had any contact with respondent was August 29, 2025, when respondent sent her a text message on the day that the investigator received the new allegations.

The trial court noted that it would "set this matter for preliminary hearing with the already scheduled preliminary hearing on September 29th, 2025, at 2:30. This will be a preliminary hearing on the amended petition at that time." The trial court then entered an order to take the

children into protective custody, specifically finding that "notice of the proceedings were given as required by law." This appeal followed.

## II. DUE PROCESS

Respondent argues that the trial court violated her right to procedural due process because it failed to follow the court rules that apply to preadjudication orders in child protective proceedings. We agree.

### A. STANDARD OF REVIEW

"Generally, whether child protective proceedings complied with a respondent's substantive and procedural due-process rights is a question of law that this Court reviews de novo." *In re Sanborn*, 337 Mich App 252, 268; 976 NW2d 44 (2021) (quotation marks and citations omitted). Issues involving the interpretation of court rules are also reviewed de novo. *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). But because respondent never objected to any violation of her procedural due process rights in the trial court, this issue is not preserved. An unpreserved claim of constitutional error is reviewed "for plain error affecting substantial rights." *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9. The respondent "must establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected [her] substantial rights." *In re Ferranti*, 504 Mich 1; 29; 934 NW2d 610 (2019). The error must also seriously affect "the fairness, integrity or public reputation of judicial proceedings." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

"The fundamental requisite of due process of law is the opportunity to be heard." *In re Sanborn*, 337 Mich App at 268 (quotation marks and citation omitted). This requires notice of court hearings:

> The "opportunity to be heard" includes the right to notice of that opportunity. An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [*In re Rood*, 483 Mich 73, 92; 763 NW2d 587 (2009) (quotation marks and citations omitted).]

The notice requirements for child protective proceedings "must be strictly construed." *In re Kozak*, 92 Mich App 579, 582; 285 NW2d 378 (1979). Generally, the respondent must be personally served with the summons at least three days before the first preliminary hearing. MCR 3.920(B)(2)(b), (4)(a), and (5)(a)(*iii*). "After a party's first appearance before the court, subsequent notice of proceedings and pleadings shall be served on that party or, if the party has an attorney, on the attorney for the party as provided in subrule (D) . . . ." MCR 3.920(G). Subrule (D) states, in relevant part, as follows:

-3-

When a child is placed outside the home, notice of the preliminary hearing or an emergency removal hearing under MCR 3.974(C)(3) must be given to the parent of the child as soon as the hearing is scheduled. The notice may be in person, in writing, on the record, or by telephone. [MCR 3.920(D)(2)(b).]

The relevant procedures for an emergency removal hearing are as follows:

(1) General. If a child for whom the court has authorized an original petition remains at home . . . , the court may order the child to be taken into protective custody pending an emergency removal hearing pursuant to the conditions listed in MCR 3.963(B)(1)[2] and upon receipt, electronically or otherwise, of a petition or affidavit of fact. . . .

(2) Notice. The court shall ensure that the parties are given notice of the emergency removal hearing as provided in MCR 3.920 and MCR 3.921.

(3) Emergency Removal Hearing. If the court orders the child to be taken into protective custody under MCR 3.963, the court must conduct an emergency removal hearing no later than 24 hours after the child has been taken into custody . . . .

(a) Preadjudication. If a child for whom a petition has been authorized under MCR 3.962 or MCR 3.965 is not yet under the jurisdiction of the court, the emergency removal hearing shall be conducted in the manner provided by MCR 3.965. [MCR 3.974(C)(1), (2), and (3)(a).]

MCR 3.965 addresses the appropriate timing and notice procedures for a preliminary hearing:

(A) Time for Preliminary Hearing.

(1) Child in Protective Custody. The preliminary hearing must commence no later than 24 hours after the child has been taken into protective custody, . . . unless adjourned for good cause shown, or the child must be released.

\* \* \*

---

[2] The listed conditions include the requirement that the court make the following findings of fact: (1) "The child is at a substantial risk of harm or is in surroundings that present an imminent risk of harm and the child's immediate removal from those surroundings is necessary to protect the child's health and safety," (2) "Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child," (3) "No remedy other than protective custody is reasonably available to protect the child," and (4) "Continuing to reside in the home is contrary to the child's welfare." MCR 3.963(B)(1).

(B) Procedure.

(1) The court must determine if the parent, guardian, or legal custodian has been notified, and if the lawyer-guardian ad litem for the child is present. The preliminary hearing may be adjourned for the purpose of securing the appearance of an attorney, parent, guardian, or legal custodian or may be conducted in the absence of the parent, guardian, or legal custodian if notice has been given or if the court finds that a reasonable attempt to give notice was made. [MCR 3.965(A)(1) and (B)(1).]

Essentially, the court rules bifurcate the emergency removal process into two stages: (1) an order to take the children into emergency protective custody, for which advance notice is not required but the court must make specific findings of fact under MCR 3.963(B)(1) to justify the order; followed by (2) an emergency removal hearing, in which notice must be given as soon as the hearing is scheduled, and if the respondent does not appear, then the court may either adjourn to secure her appearance or proceed without her upon finding that a reasonable attempt to provide notice was made.

The circumstances of this case are peculiar because the trial court referred to the September 5, 2025 hearing as an emergency removal hearing, but the hearing did not meet the requirements for describing it as such.[3] Ordinarily, a trial court would make the appropriate findings under MCR 3.963(B)(1) on the basis of the petition or affidavit, enter an order providing for the child to be taken into protective custody,[4] and *then* schedule an emergency removal hearing to occur within 24 hours and give the respondent notice. But in this case, the trial court did not enter an order providing for taking the children into protective custody before holding the purported emergency removal hearing—AS and EH were still in respondent's custody at the time of the hearing. The 24-hour window in which to hold an emergency removal hearing was not triggered until the trial court entered the protective custody order, which was *after* the hearing that purported to be an emergency removal hearing. Furthermore, neither the original petition nor the amended petition had been authorized, as was required to properly order the children's removal under MCR 3.974(C)(1).

Given that the petition was not authorized and the children had not been taken into protective custody, we hold that the hearing was not an emergency removal hearing under MCR 3.974(C)(3)(a). Even if the trial court had reasonable cause to believe that the conditions listed in MCR 3.963(B)(1) were satisfied and made specific findings of fact in that regard, it did

---

[3] We also note that the trial court used the State Court Administrative Office's (SCAO) Form JC 11a, which is designed for preliminary hearings, rather than the SCAO Form 75, which is designed for emergency removal hearings. The use of SCAO forms is not required, and they are not binding authority. *In re Doe*, 350 Mich App 1, 15; 29 NW3d 499 (2024). But the trial court's decision to reference and use the wrong SCAO form might explain some of its procedural errors.

[4] See also SCAO Form JC 05b, which is designed for courts to enter a standardized order for children to be taken into protective custody. The trial court did not use this form or enter an order with a similar effect.

not have the authority to order the children's removal without authorizing the petition. And even if it had authorized the petition and properly ordered the children to be taken into protective custody, it did not hold a "true" emergency removal hearing within 24 hours *after* the order as required under MCR 3.974(C)(3) and MCR 3.965(A)(1), let alone provide proper notice of that hearing. Accordingly, the trial court's order to remove AS and EH from respondent's custody and its failure to hold a procedurally valid emergency removal hearing were erroneous.

And if the hearing was not an emergency removal hearing and the children had not yet been taken into protective custody, then the trial court should have followed the notice requirements for an ordinary preliminary hearing. For a preliminary hearing in which the children have not been taken into protective custody, notice "must be given in writing or on the record at least 7 days before the hearing . . . ." MCR 3.920(D)(1). The trial court obviously did not satisfy that requirement, so it clearly erred when it held that "notice of the proceedings were given as required by law." Likewise, the notice defect means that no "reasonable attempt to give notice was made," so the trial court was required to adjourn the preliminary hearing to secure respondent's appearance under MCR 3.965(B)(1). The trial court stated that it would adjourn the preliminary hearing until the originally scheduled date of September 29, 2025, yet it proceeded to take testimony, make all the findings that one would expect in a preliminary hearing, and enter an "Order After Preliminary Hearing."

The myriad procedural errors in this case affected respondent's substantial rights. The trial court eventually authorized the amended petition in its order after the preliminary hearing on September 29, 2025, but that order stated that the contrary-to-welfare and reasonable-efforts findings were made in a prior order. By deferring to its factual findings from the procedurally defective, pseudo-emergency removal hearing on September 5, 2025, the trial court offered respondent no "opportunity to be heard" at a hearing held "at a meaningful time and in a meaningful manner." *In re Rood*, 483 Mich at 92 (quotation marks and citations omitted). See also MCR 3.965(C)(1) ("The respondent shall be given an opportunity to cross-examine witnesses, to subpoena witnesses, and to offer proofs to counter the admitted evidence). At the pseudo-emergency removal hearing, respondent was represented by substitute counsel, whose only participation in the hearing consisted of stating that he had a copy of the amended petition but had not had any contact with respondent, asking the CPS investigator when she last had contact with respondent, and stating that he had "nothing" to say regarding the children's removal because of his lack of contact with respondent. If proper notice were given or the hearing were properly adjourned to secure respondent's appearance, then respondent's counsel would have had more time to prepare a defense. The trial court's blending of the emergency order for protective custody, the emergency removal hearing, and the preliminary hearing into a single, undifferentiated, and procedurally deficient hearing seriously affected the integrity of the judicial proceedings. See *In re Ferranti*, 504 Mich at 29. Accordingly, we hold that the trial court plainly erred when it ordered respondent's children removed from respondent's care.[5]

---

[5] Because we vacate on the basis of the insufficient notice and other procedural defects, we do not reach respondent's argument regarding whether the trial court's findings under MCR 3.965(C)(2) were sufficient.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Thomas C. Cameron
/s/ Brock A. Swartzle